Shadrach Garrett v. Jeremiah Vaughan.

SHADRACH GARRETT v. JEREMIAH VAUGHAN.

REPLEVIN. *Adverse possession of a chattel for three years. Purchased in good faith from one who had stolen it.* Since it is the settled law of this State that adverse possession of a chattel acquired in good faith, and without fraud, felony, or force, for a period of three years, vests the absolute estate with the possession, and divests all right and title out of the original owner, the source of such possession can not be inquired into, and the one who acquires such a title to personal property may maintain an action, and recover the same from the original owner, who has re-acquired the possession without his consent, although the property was stolen from the defendant, if the plaintiff was an innocent purchaser from the thief. Statutes of Repose discussed.

Cases cited: 18 Ala., N. S., 248; Kegler v. Miles, M. & Y., 426-9; 9 Hump., 773; 5 Sneed, 318; 5 Yerg., 281; 4 Yerg., 174; 2 Sneed, 27; 6 Hump., 101; 1 Head, 346; Partee v. Badgett, 4 Yerg., 174-5; Collomb v. Taylor, 9 Hump,, 689; Bayard v. Jones, 9 Hump., 739; 1 Cold., 607; 4 Hump., 356; King's Dig., 50; Black v. State, 3 Yerg., 588; Peters v. Edwards, M. & Y., 262; Marshall v. Pennington, 8 Yerg., 433; Neely v. Lyon, 10 Yerg, 473; State v. Thompson, 2 Tenn., 96.

Act of 1715; Ch. 27, Act of 1815; Code, Sec. 2,773.

---

FROM OVERTON.

---

Appeal from the Circuit Court. S. M. FITE, Judge.

J. D. GOODPASTURE for Garrett.

J. H. WINDLE for Vaughan.

SNEED, Judge, delivered the opinion of the Court.

This is an action of replevin, and presents the ques-

8

tion whether the adverse possession of a chattel for the period necessary to make up the bar of the statute of limitations, where the said adverse holder has, in good faith, bought the property from one who had stolen it from the original owner, vests such a title as will enable said adverse holder to recover the property from the original owner who has re-acquired the possession without the consent of such adverse holder.

The plaintiff bought the mare in controversy from one Riley, in February, 1863, and paid one hundred and thirty dollars for the animal. He held and claimed her as his own in the county where both parties resided, until December, 1870, when the defendant replevied the animal from the son of plaintiff, and thereupon the plaintiff brought this action. The proof seems to establish the fact that the animal originally belonged to the defendant; that she was taken from his possession in 1861 or 1862, in the night-time, and that he saw her a short time after in the possession of this man Riley, in Clinton County, Kentucky, but for some unexplained reason he did not or could not then regain the possession. From 1863, when the plaintiff bought and took possession of the mare, to 1870, when she was taken out of the possession of his son, both parties lived in the same county, but some distance apart. The plaintiff bought the animal of Riley in good faith, and during the period referred to had never heard of any claim on the part of the defendant or other person.

We have been referred to no case involving this

precise question.   The effect of an adverse holding of personalty under a claim of right for the period prescribed by the statute of limitations is not an open question here, but how this adverse holding is affected by the fact that such adverse claimant acquired possession in good faith, but from one who had acquired it by felony, is *res integra* in this State, so far as we are advised in our reported cases.   The writer of this opinion remembers a case in which he was counsel, tried at *nisi prius*, before a very eminent jurist, Hon. John C. Humphreys, now no more, where this identical question was involved, where it was held upon full argument and advisement, that the felonious taking in the first instance did not affect the title acquired by the adverse holding by one who bought in good faith of the thief.   In reason this must be correct.   It is certainly true that no title is acquired by theft.   It was a rule at common law that a purchaser out of market overt, can not acquire a better title to property than his vendor had; on the principle that one man can not convey to another a right of property he does not himself possess.   But this case reposes upon a totally different ground.   The title is not asserted in virtue of any sale, transfer, or vestiture by the thief, but in virtue of an adverse holding under a claim of right, which of itself, *proprio vigore*, has divested the title out of the original owner and vested it in the adverse holder.   These statutes are not improperly denominated statutes of repose.   Nearly all civilized nations, and some that we are in the habit

of regarding as semi-civilized, have fallen upon a like policy for the sake of the social repose of the people. Thus in the Chinese Empire all debts and obligations to pay money or deliver property are regarded as settled and discharged after the lapse of seven years from the time when, by the contract, they ought to have been discharged. In this country the statutes which vest the title upon an adverse possession of property, rest upon a different footing from those statutes of limitations which merely bar a debt. The first operates on the right; the second on the remedy merely. Thus it is said the statute acts upon the title, and when the bar is perfect, transfers the property to the adverse possessor, while in contracts for the payment of money there is no such thing as adverse possession, but the statute simply affects the remedy and not the debt. 18 Ala., N. S., 248.

We are not called upon in this case to discuss or determine the effect of an adverse possession of stolen property by the thief himself, but its effect only upon the claim of an innocent person, who, in good faith, has bought the chattel, and who has continuously and adversely held the possession without concealment or fraud. Under the Act of 1815, Ch. 27, Sec. 5, it was held in this State that the effect of an adverse holding of personalty with a claim of right, is similar to that of realty, under the first section of the Act of 1819, Ch. 28; that it not only bars the remedy of the party dispossessed of the property, but it vests an absolute title in the possessor. This Act of 1815 was carried into

the Code, Sec. 2,773, and to the old ruling in *Kegler* v. *Miles*, M. & Y., 426, this Court has uniformly adhered in a great number of cases. 9 Hump., 773; 5 Sneed, 318; 5 Yerg., 281; 4 Yerg., 174; 2 Sneed, 27; 6 Hump., 101; 1 Head, 346, and numerous other cases.

The doctrine of the case of *Kegler* v. *Miles*, M. & Y., 426, was, that the adverse possession of a slave so long as to bar any action which could be brought against the possessor, vests in him an absolute right of property. It was insisted in that case, as in this, that the right of recaption existed, and that if the possession was peaceably acquired after the bar was effected by the lapse of time, that the right and the possession were again united, of which the original owner could not be deprived by the adverse possession, to whom the statute merely gave the power of resistance as a defendant, vesting no right that could be asserted as plaintiff; that the statute operated alone upon the remedy without touching the right. This doctrine was repudiated by the Court as applied to a case where the adverse possession had already vested the title; and it was said by Catron, J., for the Court, that nothing could be imagined more dangerous to the repose of society than the recognition of the principle that, although the remedy was barred, the right of recaption existed; and it was concluded by the Court that the three years' adverse possession of the property acquired without fraud or force, vested the absolute estate in the possessor, and he might maintain his action to recover the property from the

original owner who had the possession without his consent. Id., 429.

In the case of *Partee* v. *Badgett,* 4 Yerg., 174, it was also held that the right of recaption in such a case does not exist in this State. In that case the Judge below had charged the jury that the act of limitations only barred the remedy and not the right; and though defendants could not recover by suit, yet if their title was good before it was barred they had a right of recaption at any time afterwards; and having got the slaves in their possession after their action was barred, they thereby resorted to their first right, and the plaintiff in such case could not be aided by the statute. This Court said in that case, that in personal actions to enforce executory contracts, the statute of limitations only operates as a bar to the remedy; hence a distinct and unequivocal acknowledgement will revive the debt. But in relation to the title to personal property the rule is, and from necessity must be, different. In such case the uninterrupted adverse enjoyment of the property for the period prescribed in the statute vests the right of property in the possessor, unless prevented by some of the exceptions to the statute. 4 Yerg., 175. It must be understood, however, that this doctrine as to the right of recaption is applicable alone to cases where the remedy has been barred. In cases where a party has lost his property by a wrongful act, and he has not lost the title by an adverse holding, he may recapture it if he can do so peaceably and with-

out a trespass on the close of the wrongful possessor. *Collomb* v. *Taylor*, 9 Hum., 689; *Bogard* v. *Jones*, 9 Hum., 739; 1 Cold., 607; 4 Hum., 356.

The result of the cases is thus stated by Mr. King, 4 Dig., 50: " That the possession of a chattel for three years gives title to the possessor, and divests all right out of the former owner, so that he has, of course, no right of recaption. ,But when the right of the possessor is not perfected by the prescribed length of adverse possession, the right of recaption does exist and may be exercised, subject to the penalty that may result from the mode of its exercise; and when it *is* exercised the party is in of his old title." He cites *Black* v. *State*, 3 Yerg., 588; *Peters* v. *Edwards*, M. &. Y., 262; *Kegler* v. *Miles*, M. & Y., 426; *Marshall* v. *Pennington*, 8 Yerg., 430; *Neely* v. *Lyon*, 10 Yerg., 473; *State* v. *Thompson*, 2 Tenn., 96. Perhaps, however, the rule is better stated in the more guarded phraseology of *Collomb* v. *Taylor*, 9 Hum., 689, that in such cases the right of recaption must be exercised without a trespass or breach of the peace.

It is the settled law of this State then, that the adverse possession of personal property, acquired in good faith and without fraud, felony or force, for a period of three years, vests the absolute estate with the possession and divests absolutely all right and title out of the original owner. This being so the inquiry is, not whether the original owner lost his possession by felony or fraud, but whether the adverse possession has been acquired in good faith, and has been maintained against

all the world for the period prescribed by the statute. If this be so, the source of such possession cannot be inquired into without a manifest perversion of the meaning, intent and purpose of the "statutes of repose," and a departure from the salutary principles upon which they rest. It results, therefore, that the plaintiff, having acquired an absolute title in this property—not from or through the thief, but by his actual adverse possession, could well maintain this action and recover the property from the original owner, who had re-acquired the possession without his consent.

Affirm the judgment.